BISHOP *v.* GREGORY.

4-6081                                                    144 S. W. 2d 1083

Opinion delivered November 25, 1940.

*Horace Sloan* and *Frank Sloan,* for appellant.

*Charles Frierson, Jr.,* and *Chas. D. Frierson,* for appellee.

SMITH, J. The opinion in this case would be of interminable length should we recite and discuss all the questions of law and fact raised by the various pleadings in the case and the voluminous testimony taken. We shall, therefore, be content to state our conclusions upon the issues which we think should control the decision of the case.

Two suits were brought of a similar nature, which were consolidated for trial, and both were disposed of in a single opinion by the chancellor and by a single decree. The controlling questions are substantially identical in the two cases, and a statement of the facts in one will suffice to explain the issues in the other.

Appellee, Gregory, filed a suit against appellant, Bishop, in which he alleged his ownership of a tract of land containing 120 acres there described. Gregory

deraigned title from S. E. Adams and wife to the lands here in litigation under a deed to him from them of date June 9, 1937, title being taken subject to a deed of trust securing a debt of $14,800 due one Douglass. Other lands not involved in this litigation were included in the Adams' deed. After securing this deed, Gregory obtained the deed of the Cache River Drainage District to which district the lands had been sold under a decree foreclosing the lien of the district for unpaid drainage taxes for the years 1930 and 1931. It was alleged in the complaint that Bishop had obtained a deed from the State Land Commissioner, dated January 17, 1937, based upon a forfeiture to the state for nonpayment of the 1930 general taxes. This deed was alleged to be void because of 78 alleged defects in the sale of the land for the taxes due thereon. The sale was held void in the decree from which is this appeal, and that finding is not questioned.

Bishop filed an answer, in which he questioned Gregory's right to acquire the deed from the drainage district, for the reason that Gregory was a commissioner of the drainage district. He alleged also that Gregory had assisted him in purchasing the land from the state, and had agreed to assist him in acquiring the title of the drainage district. Bishop alleged that Gregory acted as his agent in purchasing the land from the drainage district, and had violated his agency by taking title in his own name, and he prayed that Gregory's purchase be construed as creating a trust for his benefit.

The testimony is voluminous, and is in irreconcilable conflict upon the question of fact as to Gregory's agency for Bishop in buying the land, and no useful purpose would be accomplished by setting it out in this opinion. It was reviewed by the chancellor in the opinion prepared by him upon which the decree here appealed from was based. The chancellor found and declared that no agency existed. Upon a careful consideration of the testimony, we are unable to say that this finding is contrary to a preponderance of the evidence.

Bishop insists that Gregory, not only agreed and undertook to buy the land for him, but that, in no event,

did Gregory have the right to buy the land for himself inasmuch as he (Gregory) was one of the commissioners of the drainage district.

In the second suit filed by Gregory it was alleged that he had in similar manner acquired title to two other tracts of land, one of which had been purchased by the defendant, Troxler, the other by Troxler's wife, who were made defendants, from the State Land Commissioner. The invalidity of the sales to the state upon which those deeds were based is alleged and their cancellation was prayed, and was granted by the court upon the finding that the sales were invalid. What we have said and shall say is alike applicable to both cases. The chancellor granted Gregory the relief prayed, and this appeal is from that decree.

It appears without dispute that the Cache River Drainage District had become hopelessly insolvent. The district embraced about 110,000 acres of land lying and being situate in Craighead, Jackson and Lawrence counties, the lands here in controversy being a part thereof. The district had a bonded indebtedness of more than half a million dollars in principal and an unstated and very indefinite amount of interest past due on the bonds. The district made default in 1929, and practically no payments were made to the bondholders after that time. The landowners generally ceased paying taxes, and foreclosure of the lands for the betterment assessments due the district usually resulted in sales to the district. The lands here embraced had been sold to the district for taxes due thereon.

An attempt was made to extricate the district from this condition by an application to the Reconstruction Finance Corporation for a loan of 25 per cent. of the principal indebtedness of the district. It was agreed that the loan would be made, but the matter dragged along without consummation until January 31, 1936, at which time the offer to make the loan expired by its terms. There was dissatisfaction and crimination and recrimination, detailed in the record, which we shall not review in this opinion, as to the manner in which the affairs of

the district had been managed. Finally, two of the commissioners were removed, and were replaced by Gregory and one Townsend.

Thereafter, the Reconstruction Finance Corporation was induced to renew its offer to make a loan, and there was a protracted proceeding in the bankruptcy court which finally eventuated in an agreement on the part of the bondholders to accept 33 1/3 per cent. of the face value of their bonds in payment thereof. It became necessary for the drainage district to raise considerable money to meet the terms of this settlement and to do so expeditiously. To that end the district began selling lands which had been sold to it for the nonpayment of betterment assessments. Gregory had purchased the lands here in litigation before the bankruptcy proceeding was filed, where, with the approval of the federal court, it was agreed that the district would permit redemptions at the general rate of $1 per acre where the total claims of the district exceeded that amount, but this arrangement was not to apply to current or subsequent taxes.

It does not appear to be questioned that Gregory paid the district a consideration which would have been sufficient had some other person owned and had redeemed the lands, his redemption being evidenced by the quitclaim deed of the district, which he executed to himself as an official of the drainage district. The insistence is that, being a commissioner of the district, his purchase of the land was contrary to public policy and should be declared void on that account. Cases are cited which hold that officials of an improvement district may not buy at sales for the taxes due the district; but these cases are without application here, for reasons presently to be stated.

Gregory was the owner of lands in the district before he acquired title from Adams to the lands here in controversy. The act under which the drainage district was created required that the commissioners of the district be owners of lands therein. Gregory would not otherwise have been eligible to serve as a commissioner.

There appears to be no public policy which prevents a commissioner from purchasing other lands in the district from other owners, in addition to those which he owned when he became a commissioner. Gregory had the right, therefore, to purchase and acquire title to the Adams' land, and, having done so, he had the same right which all other owners of land in the district had, to remove the lien of the drainage district against the lands in the manner available to all other landowners. He appears to have used the bonds of the district for this purpose, which had an agreed value of 33 1/3 per cent. of their face under the bankruptcy settlement. This action was permissible, not only under the settlement in the bankruptcy proceeding, but was authorized also by act No. 79 of the Acts of 1935, p. 169, which act was held constitutional and valid in the case of *Watson* v. *Barnett,* 191 Ark. 990, 88 S. W. 2d 811. See, also, *State National Bank* v. *Morthland,* 196 Ark. 346, 188 S. W. 2d 266.

It is argued that Gregory should not be accorded the relief granted by the court below, for the reason that he did not come into the chancery court with clean hands, in that he betrayed his agency and the trust incident to it, and also for the reason that he took an unconscionable advantage of the drainage district, which he was enabled to do by virtue of his office as a commissioner of the drainage district.

But, as has been said, the court below found the fact to be that Gregory did not become an agent; and in that finding we concur. There was, therefore, no trust created as an incident to an agency.

As to the good faith of Gregory's dealings with the drainage district, it may be said that Gregory was preceded in office by one Barnett as a commissioner, who appears to have had general charge of sales and redemption of lands belonging to the district, and Gregory, before becoming a commissioner, had paid Barnett,. for the account of the district, $500 for an option to purchase these lands. The district proposed to sell only such title as it had acquired through sales to it under decrees foreclosing the lien for the taxes due it, so that the deed from the district was, in effect, a redemption

certificate. The district, without being charged with favoritism, might have accorded Gregory the preferential right to redeem these lands as being the owner of the original title thereto, but, in any event, he had the right to redeem lands of which he was the owner, and he would have had this right even though he had acquired the original title to the lands after being a commissioner. This right was accorded by the decree from which is this appeal, and, as it is correct, it is affirmed.